**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**CENTRAL DIVISION**
**FRANKFORT**

Eastern District of Kentucky
F I L E D

NOV 2 2 2019

AT FRANKFORT
ROBERT R. CARR
CLERK U.S. DISTRICT COURT

**CRIMINAL ACTION NO. 3:19-CR-00028-GFVT-MAS**

**UNITED STATES OF AMERICA**                                   **PLAINTIFF**

**V.**                               **PLEA AGREEMENT**

**DYLAN LEE JARRELL**                                        **DEFENDANT**

\* \* \* \* \*

1.      Pursuant to Federal Rule of Criminal Procedure 11(c), the Defendant will enter a guilty plea to Count 2, charging a violation of 18 U.S.C. § 875(c), transmission of a threatening communication in interstate commerce; Count 5, charging a violation of 18 U.S.C. § 2261A(2), cyberstalking; Count 6, charging a violation of 18 U.S.C. § 1001(a)(2), false statements; and Count 7, charging a violation of 18 U.S.C. § 924(c), possession of a firearm in furtherance of a crime of violence.   Pursuant to Rule 11(c)(1)(A), the United States will move at sentencing to dismiss Counts 1, 3 and 4.

2.      The essential elements of Counts 2 are:

    a. The Defendant knowingly sent a message in interstate commerce;

    b. The message contained a true threat; that is, a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals;

    c. The Defendant sent the message with the purpose of issuing a threat or with the knowledge that the communication would be perceived as a threat.

3.      The essential elements of Count 5 are:

   a.  The Defendant used an electronic communication service or an electronic communication system of interstate commerce to engage in a course of conduct;

   b.  The Defendant acted with the intent to harass or intimidate another person; and

   c.  The Defendant's course of conduct caused, attempted to cause, or reasonably would be expected to cause substantial emotional distress to that person.

4.      The essential elements of Count 6 are:

   a.  The Defendant made a statement or representation;

   b.  The statement was false, fictitious, or fraudulent;

   c.  The statement was material;

   d.  The Defendant acted knowingly and willfully; and

   e.  The statement pertained to a matter within the jurisdiction of the executive branch of the United States government.

5.      The essential elements of Count 7 are:

   a.  The Defendant committed the elements of a crime of violence prosecutable in federal court; that is, a felony that has as an element the threatened use of physical force against the person or property of another;

   b.  The Defendant knowingly possessed a firearm; and

   c.  The possession of the firearm was in furtherance of the Defendant's crime of violence.

6.      As to Counts 2, 5, 6, and 7, the United States could prove the following facts that establish the essential elements of the offense beyond a reasonable doubt, and the Defendant admits these facts:

2

a. At all relevant times, the Defendant lived in and conducted his internet activities from Anderson County, Kentucky, which is in the Eastern District of Kentucky. In 2018, the Defendant began to plan and prepare to conduct an act of violence against occupants of Shelby County High School, which the Defendant had previously attended as a student. Over time, the Defendant also formulated an alternative plan to kill D.B. and himself. As described below, the Defendant took several actions in preparation for these plans, including the acquisition of a firearm. The Defendant also transmitted a variety of internet communications relating to his plans.

b. The Defendant was the creator and the exclusive user of an account named "BigDaddy101-101-" on the internet site Reddit, a communications platform that routes electronic communications through computer servers in interstate commerce. In May 2018, the Defendant wrote and transmitted the following message in interstate commerce to a public message board hosted on a website provided by Reddit: "RIP DYLAN AND ERIC IM ABOUT TO DO IT BETTER THAN CHO". The Defendant knew and intended that his statement "IM ABOUT TO DO IT BETTER THAN CHO" would be seen by members of the public and would be interpreted as a serious expression of intent to commit a school shooting. The Defendant understood that his allusion to "CHO" was a reference to Cho Seung-Hui, the individual responsible for the Virginia Tech mass murder. The Defendant also understood that his allusions to "DYLAN AND ERIC" were references to Dylan Klebold and Eric Harris, the individuals responsible for the Columbine High School mass murder. The Defendant preceded this specific statement by transmitting a number of questions on Reddit message boards such as how to "get a slidefire for my AR15", how to "hide a 16" barrel in a backpack", and how to fire an AR-15 rifle in "close indoor quarters." The Defendant knew and intended that his expression of intent to "DO IT BETTER THAN CHO" would be seen as a true threat to commit an imminent mass school shooting.

c. On May 30, 2018, a Special Agent of the Federal Bureau of Investigation ("FBI") visited the Defendant at his Anderson County residence and questioned the Defendant about the aforementioned Reddit activity. The Special Agent warned the Defendant that a false statement to the FBI could be prosecuted as a federal crime. When questioned, the Defendant denied having any knowledge of the aforementioned Reddit communications or the user name "BigDaddy101-101-". The Defendant also claimed that he had not accessed or used a Reddit website in over a year. The Defendant knew,

3

at the time that he made these statements, that he had written and communicated the messages discussed above.

d. On approximately August 22, 2018, the Defendant purchased a firearm; specifically, an American Tactical Omni Maxx P3 Hybrid 5.56 caliber AR-15 rifle, serial number NS150561. The Defendant acquired and possessed this firearm to use during his planned attack on Shelby County High School and, alternatively, during his planned murder-suicide involving D.B. In August and September 2018, the Defendant also acquired a number of other items in preparation for his attacks, including a bump stock, high capacity magazines, ammunition, and body armor.

e. The Defendant was also the creator and exclusive user of an account named "suicidal_idol_" on the Instagram application, a communications platform that routes electronic communications through computer servers in interstate commerce. From July 2018 through September 2018, the Defendant wrote and transmitted a series of messages in interstate commerce from the "suicidal_idol_" account to an Instagram account associated with D.B. As part of this series of messages, on September 24, 2018, the Defendant transmitted a communication to D.B. stating in part: "[expletive] idiot response [sic] to me before I slide thru with them choppas." The Defendant knew and intended that his statement would be perceived as a serious expression of intent to commit an act of violence against D.B. Among other reasons, the Defendant understood that his mention of "choppas" would be interpreted as a reference to semi or fully automatic firearms. At the time the Defendant composed and transmitted this message, he possessed the aforementioned AR-15 rifle and intended to use it in an act of violence on D.B.

f. As the Defendant continued to prepare, he composed draft messages that he planned to release in connection with his attacks. The Defendant composed a draft message to several media outlets stating that he "will be the newest school shooter of 2018" and specifically referencing the weapons that he would use, including an AR-15 rifle. The Defendant's draft media message expressed his intent to be "the one responsible for Americans [sic] worst school shooting in modern history," referenced a manifesto that would be posted on the Defendant's Facebook page, and solicited interviews to occur after the Defendant was taken into custody. The Defendant also composed a draft manifesto explaining his reasons for the attack, including a perceived need to fight back against the potential loss of gun rights.

4

g.  The Defendant was also the creator and exclusive user of an account in his own name on Facebook, a social media platform that routes electronic communications through computer servers in interstate commerce. On approximately October 17, 2018, the Defendant wrote and transmitted two messages in interstate commerce from his Facebook account to a Facebook account associated with K.B. The messages included the statements: "You wanna be a negro so bad lmfao. There's no such thing as white privileged you [expletive] autistic [expletive]. I hope your black children gets hung for you being so stupid. They have all the same rights we have now a days so please you and your monkey children go die · [Expletive] wanna be ass [expletive]." The Defendant understood that these messages were of a nature that would reasonably be expected to cause substantial emotional distress to K.B.

h.  On October 18, 2018, representatives from the FBI and the Kentucky State Police visited the Defendant at his Anderson County residence and questioned the Defendant about the aforementioned Reddit and Facebook activity. This time, the Defendant admitted that he had composed and transmitted the Reddit communications from the "BigDaddy101-101-" account. The Defendant also admitted that he had composed and transmitted the Facebook messages to K.B. The Defendant voluntarily provided his mobile telephone to the FBI for forensic examination. The FBI's forensic examination revealed evidence of the Defendant's plans to attack Shelby County High School and D.B. Upon being questioned about the contents of his telephone, the Defendant admitted formulating both of these plans and acquiring the aforementioned AR-15 in furtherance of these plans.

7.  The statutory punishment for Counts 2, 5, and 6 is imprisonment for not more than 5 years, a fine of not more than $250,000, and supervised release for not more than 3 years. If the violation admitted in Count 6 involved domestic terrorism, as defined in 18 U.S.C. § 2331, the statutory punishment for Count 6 is imprisonment for not more than 8 years, a fine of not more than $250,000, and supervised release for not more than 3 years. The statutory punishment for Count 7 is imprisonment for not less than 5 years to run consecutively to any other term of imprisonment imposed, a fine of not more than $250,000, and supervised release of not more than 5 years. A mandatory special

assessment of $100 per count applies, and the Defendant will pay this assessment to the U.S. District Court Clerk at the time of the entry of the plea.

8.   Pursuant to Rule 11(c)(1)(B), the United States and the Defendant recommend the following sentencing guidelines calculations, and they may object to or argue in favor of other calculations. This recommendation does not bind the Court.

a. United States Sentencing Guidelines (U.S.S.G.), November 2018 manual, will determine the Defendant's guidelines range;

b. The total offense level applicable to Count 2 is 23, which includes:

i.   A base offense level of 12, pursuant to U.S.S.G. § 2A6.1(a)(1);

ii.   A 6-level increase, pursuant to U.S.S.G. § 2A6.1(b)(1), because the offense involved conduct evidencing an intent to carry out the threat;

iii.   A 4-level increase, pursuant to U.S.S.G. § 2A6.1(b)(4), because the offense involved a substantial disruption of public and governmental functions; that is, the temporary closure of Anderson County schools after the discovery of the Defendant's plans;

iv.   A 4-level increase, pursuant to U.S.S.G. § 3B1.5(2)(B), because the defendant used body armor in preparation for the offense;

v.   A 2-level decrease, pursuant to U.S.S.G. § 3E1.1, for the Defendant's acceptance of responsibility, unless the Defendant commits another crime, obstructs justice, or violates a court order. If the offense level determined prior to this 2-level decrease is level 16 or greater, the United States will move at sentencing to decrease the offense level by 1 additional level based on the Defendant=s timely notice of intent to plead guilty.

c. The total offense level applicable to Count 5 is 18, which includes:

i.   A base offense level of 18, pursuant to U.S.S.G. § 2A6.2(a);

ii.   A 3-level increase, pursuant to U.S.S.G. § 3A1.1(a), because the Defendant intentionally selected victims as the object of the offense because of actual or perceived race and color;

      iii.    A 2-level decrease, pursuant to U.S.S.G. § 3E1.1, for the Defendant's acceptance of responsibility, unless the Defendant commits another crime, obstructs justice, or violates a court order. If the offense level determined prior to this 2-level decrease is level 16 or greater, the United States will move at sentencing to decrease the offense level by 1 additional level based on the Defendant=s timely notice of intent to plead guilty.

    d.   The total offense level applicable to Count 6 is 12 and includes:

      i.    A base offense level of 14, pursuant to U.S.S.G. § 2J1.2(a);

      ii.    A 2-level decrease, pursuant to U.S.S.G. § 3E1.1, for the Defendant's acceptance of responsibility, unless the Defendant commits another crime, further obstructs justice, or violates a court order.

    e.   Counts 2, 5, and 6 are each treated as a separate group under the principles of U.S.S.G. § 3D1.2 and for the purposes of U.S.S.G. § 3D1.4. Count 2 reflects the highest offense level (23) and results in 1 unit pursuant to U.S.S.G. § 3D1.4(a). Count 5 results in an additional ½ unit pursuant to U.S.S.G. § 3D1.4(b). Count 6 results in no additional units. Under U.S.S.G. § 3D1.4, the combined offense level is 24.

    f.   The sentence for Count 7 will be a term of 60 months, which will run consecutively to the sentence imposed for the other counts, pursuant to 18 U.S.C. § 924(c)(1)(D)(ii) and U.S.S.G. §§ 2K2.4(b), 5G1.2(a).

9.    No agreement exists about the Defendant's criminal history category pursuant to U.S.S.G. Chapter 4.

10.    The Defendant will not file a motion for a decrease in the offense level based on a mitigating role pursuant to U.S.S.G. § 3B1.2 or a departure motion pursuant to U.S.S.G. Chapter 5, Parts H or K.

11.    The United States does not oppose the Defendant's request to the Court that it recommend to the U.S. Bureau of Prisons that the Defendant be housed at a BOP facility, suitable for his security designation, that would provide him opportunities for

mental health counseling and treatment.  The Defendant intends to request that the Court recommend he be incarcerated at FMC Lexington, and the United States agrees not to object to this recommendation. Of course, the parties agree that ultimate authority on placement for service of sentence rests solely with the U.S. Bureau of Prisons.

12.    The Defendant waives the right to appeal the guilty plea and conviction. The Defendant waives the right to appeal any determination made by the Court at sentencing with the sole exception that the Defendant may appeal any aspect of the sentence if the length of the term of imprisonment exceeds the advisory sentencing guidelines range as determined by the Court at sentencing.   Except for claims of ineffective assistance of counsel, the Defendant also waives the right to attack collaterally the guilty plea, conviction, and sentence.

13.    The Defendant will forfeit to the United States all interest in the property listed in the forfeiture allegation of the Indictment and will execute any documents necessary for this forfeiture.  The Defendant agrees that this property is subject to forfeiture because a nexus exists between the property and the offense, as set out in the forfeiture allegation of the Indictment.

14.    The Defendant agrees to cooperate fully with the United States Attorney's Office by making a full and complete financial disclosure.  Within 30 days of pleading guilty, the Defendant agrees to complete and sign a financial disclosure statement or affidavit disclosing all assets in which the Defendant has any interest or over which the Defendant exercises control, directly or indirectly, including those held by a spouse, nominee, or other third party, and disclosing any transfer of assets that has taken place

8

within three years preceding the entry of this plea agreement. The Defendant will submit to an examination, which may be taken under oath and may include a polygraph examination. The Defendant will not encumber, transfer, or dispose of any monies, property, or assets under the Defendant's custody or control without written approval from the United States Attorney's Office. If the Defendant is ever incarcerated in connection with this case, the Defendant will participate in the Bureau of Prisons Inmate Financial Responsibility Program, regardless of whether the Court specifically directs participation or imposes a schedule of payments. If the Defendant fails to comply with any of the provisions of this paragraph, the United States, in its discretion, may refrain from moving the Court pursuant to U.S.S.G. § 3E1.1(b) to reduce the offense level by one additional level, and may argue that the Defendant should not receive a two-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1(a).

15.     The Defendant understands and agrees that, pursuant to 18 U.S.C. § 3613, whatever monetary penalties are imposed by the Court will be due and payable immediately and subject to immediate enforcement by the United States. If the Court imposes a schedule of payments, the Defendant agrees that it is merely a minimum schedule of payments and not the only method, nor a limitation on the methods, available to the United States to enforce the judgment. The Defendant waives any requirement for demand of payment on any fine, restitution, or assessment imposed by the Court and agrees that any unpaid obligations will be submitted to the United States Treasury for offset. The Defendant authorizes the United States to obtain the Defendant's credit reports at any time. The Defendant authorizes the U.S. District Court to release funds

posted as security for the Defendant's appearance bond in this case, if any, to be applied to satisfy the Defendant's financial obligations contained in the judgment of the Court.

16.    If the Defendant violates any part of this Agreement, the United States may void this Agreement and seek an indictment for any violations of federal laws, and the Defendant waives any right to challenge the initiation of additional federal charges.

17.    This document and the supplement contain the complete and only Plea Agreement between the United States Attorney for the Eastern District of Kentucky and the Defendant. The United States has not made any other promises to the Defendant.

18.    This Agreement does not bind the United States Attorney=s Offices in other districts, or any other federal, state, or local prosecuting authorities.

19.    The Defendant and the Defendant's attorney acknowledge that the Defendant understands this Agreement, that the Defendant's attorney has fully explained this Agreement to the Defendant, and that the Defendant=s entry into this Agreement is voluntary.

ROBERT M. DUNCAN, JR.
UNITED STATES ATTORNEY

Date:  11/22/19                    By:  _____
                                        Andrew T. Boone
                                        Assistant United States Attorney


Date:  11 - 22 - 2019              _____
                                   Dylan Lee Jarrell
                                   Defendant

10

Date: 11/22/19

Matthew W. Boyd
Attorney for Defendant

11