UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

CRIMINAL ACTION NO. 3:19-CR-00028-GFVT-MAS

UNITED STATES OF AMERICA                                                                PLAINTIFF

V.            **UNITED STATES'S SENTENCING MEMORANDUM**

DYLAN LEE JARRELL                                                                       DEFENDANT

\* \* \* \* \*

The defendant, Dylan Lee Jarrell, plotted and prepared to kill many people at his former high school. Federal and state law enforcement interrupted that plan before Jarrell could harm a single person. But in the months leading up that event, Jarrell acquired all the tools he needed to perform this heinous act, including an AR-15 semiautomatic rifle and a bump stock. Jarrell possessed this rifle as he threatened the other object of his murderous rage—a female hip-hop artist who had become his obsession and who he hoped to kill in a murder-suicide. After law enforcement detected Jarrell's plans, a federal grand jury indicted him of multiple crimes based on these and other events. Jarrell then entered guilty pleas to transmission of a threatening communication in interstate commerce (Count 2), cyberstalking (Count 5), false statements to the FBI (Count 6), and possession of a firearm in furtherance of a crime of violence (Count 7). He now is before this Court for sentencing.

The United States Probation Office has determined that the sentencing guidelines range is 51 to 63 months for Counts 2, 5, and 6. [*See* PSR ¶ 81.] The Probation Office's recommendation reflects all of the relevant conduct associated with the counts of conviction and includes offense level enhancements based on: (1) Jarrell's conduct evidencing intent to carry out his threats [6 levels per U.S.S.G. § 2A6.1(b)(1)]; (2) Jarrell's substantial disruption of public functions; specifically, the closure of Anderson County Public Schools following the discovery of Jarrell's plot [4 levels per U.S.S.G. § 2A6.1(b)(4)(A)]; (3) Jarrell's use of body armor in preparation for a crime of violence [4 levels per U.S.S.G. § 3B1.5(2)(B)]; and (4) Jarrell's intentional selection of a victim because of perceived race [3 levels per U.S.S.G. § 3A1.1(a)]. [*See* PSR ¶¶ 25-33.] Neither party has objected to any aspect of these Guidelines calculations.

For Count 7, the mandatory minimum sentence is 60 months imprisonment, *see* 18 U.S.C. § 924(c)(1)(D)(ii), and the Sentencing Guidelines prescribe this term to be imposed consecutively with the term(s) of imprisonment for the other counts. *See* U.S.S.G. § 2K2.4(b), 5G1.2(a). Thus, for all counts combined, the recommended term of imprisonment is between 111 and 123 months.

For the reasons stated below, the United States respectfully asks the Court to impose a sentence that includes a 123-month term of imprisonment and a 5-year term of supervised release.

A.  The Nature and Circumstances of the Offense and the History and Characteristics of the Defendant.

Jarrell stands to be sentenced for four offenses, each arising from his words and his possession of a firearm. But Jarrell's offenses are much more serious than mere words; he committed each of these crimes as part of a fully developed plan to commit mass murder. The nature and circumstances of these offenses can only be understood fully within the context of Jarrell's deadly objectives.

On October 18, 2018, state law enforcement received a complaint from K.B. about racially motivated harassment from a Facebook user who K.B. identified as Jarrell. Federal and state law enforcement worked together to quickly locate and confront Jarrell, search his social media accounts and electronic devices, and ultimately arrest Jarrell on state terroristic threatening charges. The FBI interviewed Jarrell shortly after his arrest. Jarrell confessed he had been preparing for a school shooting as reprisal for perceived personal grievances and as a political statement. Jarrell referred to the FBI to a manifesto he had drafted to explain his motives.[1] In the interview and manifesto, Jarrell explained

---

[1]  Before Jarrell's arrest and this interview, the FBI located this manifesto stored in an application on Jarrell's iPhone, along with related checklists for attack preparation, draft messages to media outlets and individuals, and song lyrics composed by Jarrell between June and October 2018. The United States is submitting these writings for the Court's review through a contemporaneous filing made under seal. A growing body of research has recognized the phenomenon by which publication of details about mass shootings, including especially the shooter's motivations, tends to inspire copycat actions. *See, e.g.,* Alex Pew, et al., *Does Media Coverage Inspire Copy Cat Mass Shootings?*, N'tl Ctr. for Health Research, *at http://www.center4research.org/copy-cats-kill/* (last visited May 15, 2020). In fact, Jarrell himself drew motivation from mass murderers who preceded him, as he wrote and later confessed to the FBI. In order to avoid further publication of Jarrell's writings about his own motivations for his planned attack, the United States respectfully asks the Court to maintain the manifesto and other writings under seal indefinitely.

how he had fixated on a hip-hop artist (identified in the indictment as D.B.). Jarrell described a plan he had formulated to commit a murder-suicide with D.B. at a concert scheduled in Kentucky in late 2018. Jarrell explained that events in his life caused him to step up his plans for violence, and he then began to plot a more imminent mass shooting.

Jarrell formulated a specific plan to attack Shelby County High School, which he had previously attended as a student. Jarrell told the FBI he intended to focus his attack on an administrator and a teacher who he believed had treated him unfairly. Jarrell claimed he intended to attack only the school's administrators and faculty members. During its search of Jarrell's mobile phone, however, the FBI located a draft message Jarrell composed to multiple media outlets. In this message, Jarrell stated his aspiration to shed more blood than any other school shooter who preceded him. Jarrell's media message is quoted in pertinent part below:

> Hello, I am contacting you today to let you all know I will be the newest school shooter of 2018. I will be using a AR15 with 100 round magazine and a 100 Round Drum which will also have a bump stock attached to it. I will have a custom Dust Cover that says "you're fucked" and custom writing on my magazines. This will occur somewhere in Kentucky I will not tell you where at yet because I have not done it yet but it will be somewhere close to Anderson county. . . . Now since I don't plan on committing suicide or shooting it out with the cops but rather surrounding on sight and dropping my gun. I will be doing written interviews with anyone who would like to interview me (*the one responsible for Americans worst school shooting in modern history*.) . . . . I thank you for your time and all the postings you will do about me.

(Emphasis added.)

As Jarrell plotted his violence toward D.B. and Shelby County High School, he acquired all the tools necessary for mass murder.  In August 2018, Jarrell purchased an American Tactical Omni Maxx P3 Hybrid 5.56 caliber AR-15 rifle.  In the weeks that followed that purchase, Jarrell acquired a bump stock, several high capacity magazines, body armor, ammunition, and other tactical gear.  In mid-October, Jarrell secretly stashed his firearm, magazines, ammunition, and tactical gear in the trunk of a family car.  Drawing ideas from a previous mass murderer, Jarrell disguised the rifle in a guitar case.  Jarrell would later tell the FBI that his intent was to ready himself for the moment when a fight with a family member would anger and embolden him for the attack.  In essence, Jarrell built a powder keg and was waiting only for someone else to light the fuse.

The heroic actions of a few prevented that from happening.  When Jarrell's fury boiled out over the internet, K.B. identified him and reported his harassment to Kentucky state law enforcement.  Upon receipt of this tip, the FBI rapidly confirmed Jarrell as the likely author of anonymously posted internet outbursts implying preparations for a school shooting.  The FBI located Jarrell and obtained consent to search his phone, placed him under immediate and constant surveillance, and quickly performed forensic examinations on his device, revealing his plans.  FBI surveillance observed Jarrell attempting to enter a car to leave his home at approximately 3:12pm on October 18, 2018.  State and federal law enforcement sprang into action to arrest Jarrell and search the car.  That search revealed Jarrell's firearm, magazines, ammunition, and tactical gear, each concealed in the car as he was trying to leave.

The government cannot say with certainty where Jarrell intended to go as he attempted to leave his home that day. Jarrell had already been questioned by the FBI earlier that morning and knew that the FBI was already reviewing the content of his phone. When the FBI interdicted him, Jarrell claimed he did "not wanna hurt anyone today." Yet, his manifesto expressed his intent to accelerate his plans in response to his awareness of other law enforcement scrutiny of his activities. It is possible that Jarrell simply intended to dispose of the evidence contained in the trunk of his car. But it is also possible that Jarrell intended then to carry out his plans in some form.[2] What can be said with certainty is this: Jarrell's plans were averted not by any action that should be credited to him at sentencing, but by a private citizen's diligence and a resourceful law enforcement response.

In addition to these circumstances surrounding his offenses, the Court will consider Jarrell's history and characteristics to fashion an appropriate sentence. The presentence report details aspects of Jarrell's troubled past and diagnosed impediments and disorders. [*See* PSR ¶¶ 61, 64-69.] It undoubtedly would be challenging for any individual to rise above some of these issues. But Jarrell, so far, has rejected many intervention attempts, [*see id.* ¶ 65], and instead chose an abhorrent expression of his

---

[2]  Shelby County High School was approximately a thirty minute drive from Jarrell's home and was closed for fall break on the day of Jarrell's arrest. But Anderson County High School was in session that day and was approximately a two minute drive from Jarrell's home. Jarrell was attempting to leave his home during the school's dismissal time. Anderson County High School closed the following day in response to discovery of Jarrell's plans and as law enforcement investigated whether Jarrell planned to act alone.

anger. Jarrell's history and characteristics signal a serious need for the sentence imposed to provide treatment and rehabilitation, but they do not give reason for leniency.

      B.  <u>Punishment for the Offense and General Deterrence.</u>

It is vital for the sentence imposed to "reflect the seriousness of the offense," "promote respect for the law," "provide just punishment for the offense," and "afford adequate deterrence to criminal conduct." 18 U.S.C. § 3553(a)(2)(A), (B). Each of these factors necessitates the highest recommended term of incarceration.

It is difficult to imagine a crime more serious than the mass murder Jarrell plotted. The only mitigating circumstance is that he did not succeed, which happened because of the intervention of others. For this—and perhaps only this—reason, Jarrell faces sentencing not for murder, but for offenses committed while he planned this atrocity. In May 2018, Jarrell used an anonymous Reddit account to post a series of questions and a threat implying he was planning a school shooting. [*See* R. 29: Plea Agreement at ¶ 6(b).] A preliminary FBI investigation revealed information potentially attributing these posts to a residence at which Jarrell lived with several others. In a May 2018 interview with the FBI, Jarrell disclaimed knowledge of the posts and lied about ownership of the Reddit account, impeding the investigation. [*See id.* ¶ 6(c).] As the summer progressed, Jarrell acquired an AR-15 rifle and other items to facilitate the murder-suicide he had planned for D.B. and the school shooting he ultimately resolved to commit. [*See id.* ¶ 6(d).] In September 2018, Jarrell sent a series of Instagram messages to D.B., threatening to attack D.B. with the rifle he possessed. [*See id.* ¶ 6(e).] These

events are the factual predicates for Counts 2, 6, and 7. Each of these offenses was unquestionably serious, especially in light of Jarrell's overall objectives.

Jarrell's cyberstalking of K.B. (Count 5) appeared to be an act of rage disconnected from Jarrell's mass shooting plans, but was also serious. Jarrell targeted K.B. based on the race of K.B.'s children and expressed hope that the children would be "hung." [*See* R. 29: Plea Agreement at ¶ 6(g).] The incident distressed K.B. so much that K.B. researched and identified Jarrell and reported him to Kentucky state law enforcement.

A sentence at the top of the guidelines range would be an appropriate and just punishment for these offenses. Tragedy was averted in this case, but Jarrell should not receive credit for that. Jarrell tried to impede the FBI's investigation when questioned about the suspicious Reddit activity in May 2018. He only began to cooperate upon being questioned again in October 2018 and only when law enforcement confronted him with evidence specifically relating to his harassment of K.B. Only then did Jarrell consent to a search of his phone and, after being arrested, confess to his plans. If not for this late cooperation and his guilty plea, the United States would have sought an obstruction of justice enhancement and an above-guidelines sentence. Jarrell's punishment should, to the extent consistent with the guidelines, reflect the carnage he planned and would have wrought if not for law enforcement's timely intervention. A

sentence at the top of the recommended range would also promote respect for the law by communicating the imperative to be truthful in an investigation.

The need for general deterrence is also a driving concern in this case. The rising frequency of active shooter situations has been a gruesome feature of American life over the last two decades. The FBI compiled and published a data analysis of these incidents between 2000 and 2018.[3] This analysis showed a sustained upward trend in the 2000s and over a dozen of these incidents in all but one year of the 2010s:



The more recent shootings tended to feature higher numbers of casualties:

---

[3] *See Quick Look: 277 Active Shooter Incidents in the United States From 2000 to 2018*, FBI Office of Partner Engagement, *at* https://www.fbi.gov/about/partnerships/office-of-partner-engagement/active-shooter-incidents-graphics (last visited May 7, 2020).



These numbers track the reality that would-be shooters are studying the actions of previous shooters, mimicking their use of military-style firearms, bump stocks designed to simulate automatic fire, and high capacity magazines.  The FBI analysis found that they have increasingly launched their attacks in crowded locations like businesses, government buildings, places of worship, and—as Jarrell planned in this case—schools.



In short, there are more active shooters today than there were twenty years ago, and more of them are using tactics designed to inflict the most bloodshed possible.  Jarrell's plan

fell squarely within this trend. There must be a clear, consistent message that these aspiring murderers can be detected and disrupted in their planning phases, will be vigorously investigated and prosecuted, and will receive sentences among the most serious available under law. The government recognizes this problem will not be solved overnight or through one criminal case, but it respectfully asks the Court to impose a sentence that contributes to this message.

      C.  <u>Protection of the Public and Rehabilitation of the Defendant.</u>

The sentence imposed must also "protect the public from further crimes of the defendant" and "provide the defendant with needed education or vocational training, medical care, or other correctional treatment." 18 U.S.C. § 3553(a)(2)(C), (D). Incapacitation, specific deterrence, and rehabilitation are all important issues for which Jarrell's sentence must account. Without restrictions on his liberty, Jarrell posed a significant threat to the community. The longer Jarrell is incarcerated, the longer that threat is removed from public space. Yet, Jarrell does not face life in prison and will inevitably reenter society in the future. His successful rehabilitation would provide the only lasting safeguard against a revival of the violence he once planned. The Bureau of Prisons is equipped with the facilities and programs necessary to give Jarrell a chance at successful reentry. But the highest recommended term of incarceration also carries the highest possibility of success for these programs to work.

For many of the same reasons, the government respectfully asks the Court to impose the maximum term of supervised release available to follow Jarrell's term of imprisonment. In this case, that is a five-year supervised release term. *See* 18 U.S.C.

§§ 3583(b)(1) & 3624(e).  The United States Probation Office has recommended certain release conditions designed to mitigate the public safety threat from Jarrell upon his reentry into society.  [*See* PSR ¶ 86.]  These conditions include residential searches, electronic device inspections, and prohibitions on internet activities, along with requirements for Jarrell to subject himself to any prescribed medical care and counseling.  [*See id.*]  These conditions, coupled with a five-year term of supervised release, will put the Court in the best position to assess Jarrell's state and the extent to which he poses any potential danger upon his release.

## CONCLUSION

For the foregoing reasons, the United States respectfully asks the Court to impose a 123-month term of imprisonment and a five-year term of supervised release.

<br>

Respectfully submitted,

ROBERT M. DUNCAN, JR.
UNITED STATES ATTORNEY

By:   s/ Andrew T. Boone
      Andrew T. Boone
      Assistant United States Attorney
      260 W. Vine Street, Suite 300
      Lexington, Kentucky 40507-1612
      (859) 685-4841
      FAX (859) 233-2747
      andrew.boone2@usdoj.gov

## CERTIFICATE OF SERVICE

    On May 15, 2020, I electronically filed this document through the ECF system, which will send the notice of electronic filing to counsel of record.

                                            /s/Andrew T. Boone
                                            Assistant United States Attorney